FLORIDA AFL-CIO et al., Plaintiffs,

v.

STATE OF FLORIDA DEPARTMENT OF LABOR AND EMPLOYMENT SECURITY et al., Defendants.

No. TCA 78–1043.

United States District Court,
N. D. Florida,
Tallahassee Division.

Dec. 22, 1980.

Ben R. Patterson, III, Tallahassee, Fla., for plaintiffs.

Kenneth H. Hart, Dept. of Labor & Employment Security, Tallahassee, Fla., for defendants.

### FINAL SUMMARY JUDGMENT

HIGBY, District Judge.

All parties have moved for summary judgment, and summary judgment is appropriate. At issue is the validity of part of Florida's unemployment compensation statute as applied by the Defendants. In Florida a person is disqualified from eligibility for unemployment compensation if she has failed without good cause to apply for available suitable work or to accept suitable work when offered. § 443.06(2), Fla.Stat.

(Supp.1978). A person is also disqualified if she voluntarily leaves her employment without good cause attributable to her employer. § 443.06(1), Fla.Stat. (Supp.1978). Florida Administrative Code Rule 8B–2.16 delineates factors to be considered in determining the suitability of work and specifically designates some work as unsuitable. Florida courts, the Unemployment Appeals Commission, and the Defendants interpret the statute and regulation to mean a union member who leaves or refuses work solely because it is or has become non-union is disqualified from receiving unemployment compensation, even though her union penalizes her for retaining or accepting the work. *Adams v. The Auchter Company,* 339 So.2d 623 (Fla.1976), *aff'g, The Auchter Company v. Industrial Relations Commission,* 304 So.2d 487 (Fla. 1st D.C.A. 1974); U.C. Order No. 78–1899 (October 30, 1978). The Plaintiffs attack this interpretation of suitable work and good cause attributable to an employer as impermissible because the federal government has preempted the subject with the Labor Management Relations Act, Title 29, United States Code, Section 141 *et seq.,* and the National Labor Relations Act, Title 29, United States Code, Section 151 *et seq.*

All the human Plaintiffs are members of unions affiliated with the non-human Plaintiff, Florida AFL–CIO.

Plaintiffs Detweiler, Cush, Hamilton, and Bass voluntarily left their employment when their employers went nonunion. They all filed claims for unemployment compensation benefits and, on appeal, were determined to be disqualified pursuant to Florida Statutes, § 443.06(1). They could have remained in employment with their employers after the employers went nonunion, at wage rates substantially the same as before going nonunion. The reason these Plaintiffs quit their employment was because there ceased to be a collective bargaining agreement between their union(s) and their employer(s). Except for the lack of a collective bargaining agreement, continued employment with the Plaintiffs' employers would have been 'suitable.' Under the provisions of Florida Statutes, §§ 443.-06(1), (2) and Rule 8B–2.16, Florida Administrative Code, employment for union members, such as Plaintiffs, would not be deemed 'unsuitable' on the basis that such employment is not covered by a collective bargaining agreement.

Pre-Trial Stipulation, Doc. No. 53 at 4. Keiser has not been denied benefits because of refusing non-union work. But he is a member of an AFL–CIO union.

"It is the policy of all labor organizations which are members of Plaintiff Florida AFL–CIO that members may not accept work, or continue to work, for an employer who is not subject to a collective bargaining agreement. Members who violate this policy may be subject to fine, suspension, or expulsion from the labor organization, depending upon the facts and circumstances of the particular case and the policies of the particular local." *Id.*

Plaintiffs argue the Defendants' interpretation of suitable work and good cause to leave employment frustrates the policy against non-union work and meddles impermissibly in an area preempted by federal legislation solely for federal regulation.

The doctrine of labor law pre-emption concerns the extent to which Congress has placed implicit limits on 'the permissible scope of state regulation of activity touching upon labor-management relations.' *Sears, Roebuck & Co. v. Carpenters,* 436 U.S. 180, 187, 98 S.Ct. 1745 [1752], 56 L.Ed.2d 209 . . . .

There is general agreement on the proposition that the 'animating force' behind the doctrine is a recognition that the purposes of the federal statute would be defeated if state and federal courts were free, without limitation, to exercise jurisdiction over activities that are subject to regulation by the National Labor Relations Board. *Id.,* at 218, 98 S.Ct. 1745 [at 1768], 56 L.Ed.2d 209 (Brennan, J., dissenting). The overriding interest in a uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress not only de-

**532**

mands that the NLRB's primary jurisdiction be protected, it also forecloses overlapping state enforcement of the prohibitions in § 8 of the Act, *Plankinton Packing Co. v. Wisconsin Employment Relations Board*, 338 U.S. 953, 94 L.Ed. 588, 70 S.Ct. 491, as well as state interference with the exercise of rights protected by § 7 of the Act. *Automobile Workers v. Russell*, 356 U.S. 634, 644, 78 S.Ct. 932, 2 L.Ed.2d 1030.

*New York Telephone Company v. New York State Department of Labor*, 440 U.S. 519, 527, 528, 99 S.Ct. 1328, 1334, 1335, 59 L.Ed.2d 553, 561 (1979) (footnotes omitted). There are no easily applicable rules. "Instead, the cases reflect a balanced inquiry into such factors as the nature of the federal and state interests in regulation and the potential for interference with federal regulation." *Farmer v. United Brotherhood of Carpenters and Joiners of America, Local 25*, 430 U.S. 290, 300, 97 S.Ct. 1056, 1063, 51 L.Ed.2d 338, 350 (1977).

■ *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), established two guidelines. First: "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." *Garmon*, 359 U.S. at 244, 79 S.Ct. at 779, 3 L.Ed.2d at 782. Second: "When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Garmon*, 359 U.S. at 245, 79 S.Ct. at 779, 3 L.Ed.2d at 783. *See, also, Sears, Roebuck and Company v. Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978); *Lodge 76, International Association of Machinists and Aero-Space Workers, AFL-CIO v. Wisconsin Employment Relations Commission*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976).

Last year in *New York Tel. Co. v. New York Labor Dept.*, 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979), the Supreme Court applied the *Garmon* guidelines to a situation quite analogous to the dispute in this case. Despite the Plaintiffs' attorney's valiant broken field running in the case distinguishing game, I find that decision controlling. The dispute in *New York Telephone Company* was over a provision in New York's unemployment compensation statute which allowed striking workers to receive unemployment compensation benefits. Initially the Court pointed out that unlike most labor law preemption cases a state effort to regulate conduct prohibited or protected by federal labor laws was not involved. It focused on the second *Garmon* factor. "[D]ifferences between state laws regulating private conduct and the unemployment-benefits program at issue" were determinative. *New York Tel. Co.*, 440 U.S. at 530, 99 S.Ct. at 1336, 59 L.Ed.2d at 564. For a variety of reasons, they made that case comparable to "others in which the Court has shown a reluctance to infer a preemptive congressional intent." *Id.*

The symbiotic relationship between state unemployment compensation statutes and federal legislation encouraging their existence and helping fund compensation programs proved to the Court's satisfaction that this was an area Congress intended to leave to the states. "Title IX of the Social Security Act of 1935, established the participatory federal unemployment compensation scheme. The statute authorizes the provision of federal funds to States having programs approved by the Secretary of Labor." *New York Tel. Co.*, 440 U.S. at 536, 99 S.Ct. at 1339, 59 L.Ed.2d at 566 (footnote omitted).

The voluminous history of the Social Security Act made it abundantly clear that Congress intended the several States to have broad freedom in setting up the types of unemployment compensation that they wish. We further noted that when Congress wished to impose or forbid a condition for compensation, it did so explicitly; the absence of such an explicit condition was therefore accepted as a

strong indication that Congress did not intend to restrict the States' freedom to legislate in this area.

*New York Tel. Co.*, 440 U.S. at 537, 538, 99 S.Ct. at 1339, 1340, 59 L.Ed.2d at 567 (footnotes omitted). After a detailed examination of the history of the Social Security Act of 1935 with its heavy often repeated emphasis upon state autonomy in unemployment compensation plans, the Court concluded New York's unemployment compensation statute was due the deference afforded "analogous state laws of general applicability that protect interests 'deeply rooted in local feeling and responsibility.'" *New York Tel. Co.*, 440 U.S. at 540, 99 S.Ct. at 1341, 59 L.Ed.2d at 568. Such laws are not found preempted unless a compelling congressional direction to do so can be found. *Id.* The Court found no such compelling congressional direction in *New York Telephone Company.* For the same reasons I find none here. The cases are too similar for any other conclusion to logically follow.

 State unemployment statutes are involved in both. Consequently the Court's determination that unemployment compensation was a subject Congress specifically intended to leave for the state's governance applies. The interference with the balance of power between labor and management created by Florida's law is much less than that caused by the New York law the Court approved. Benefits paid New York strikers significantly strengthened their ability to prolong a strike. In addition the strikers' employers shouldered a large part of the cost of the benefits. In contrast here there is no showing that denial of benefits hampers union members in their dealings with management. Allegations to that effect have been made, but no evidence cognizable under Federal Rule of Civil Procedure 56 has been submitted to substantiate them. Had evidence been submitted, however, it would not affect this decision. A state law's effect upon the economic weapons allowed labor and management is one of the crucial considerations in labor law preemption analysis. *New York Tel. Co. v. New York Labor Dept.*, 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979). Florida's dis-

qualification from receipt of benefits of those rejecting employment because it is non-union cannot have as significant an effect upon the balance of power as New York's payment of benefits to striking workers at their employer's expense. The Supreme Court has already approved a Florida statute prohibiting an even more potent union weapon, the union shop. *Retail Clerks International Association v. Schermerhorn*, 375 U.S. 96, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963). If that restriction upon union activity payment of benefits to strikers is permissible, Florida's disqualification of those refusing non-union work is certainly permissible.

Other cases involving other laws involving "state laws of general applicability that protect interests 'deeply rooted in local feeling and responsibility'" lead to the same conclusion. *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), is an instructive and analogous example. There union members picketed Sears upon Sears' property to force Sears to employ union hall dispatched carpenters. Their picketing was arguably protected by federal labor laws; ejecting the picketers was arguably prohibited. Although picketing is labor's classic weapon, the Court nonetheless held the state could enforce its trespass statute against the picketers and require them to leave Sears' property. The legitimacy of the picketing was a different controversy than the appropriateness of the location. The location was the state's concern, and its regulation by trespass statute was not prohibited. Entitlement to unemployment compensation is a state concern separate from union members' decision to reject non-union work. Like California's trespass statute, Section 443.06 is not preempted by federal labor laws.

The Plaintiffs have hinted with desultory, gratuitous comments that they also challenge Section 443.06 as a violation of their right to freedom of association. I do not consider the issue adequately raised and find it meritless.

534

Plaintiffs' motion for summary judgment is denied. Defendants' motion for summary judgment is granted. The Clerk shall tax all lawful costs against the Plaintiffs.